IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3058-FL

| | |
|---|---|
| BRUCE L. GORHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| SUPERINTENDENT GRADY ) | |
| MASSEY;[1] SERGEANT ERIC ) | |
| PITTMAN;[2] OFFICER JOHNNY ) | |
| ARRINGTON;[3] SERGEANT GARY ) | |
| BENNETT;[4] and SERGEANT KELVIN ) | |
| SMITH,[5] ) | |
| ) | |
| Defendants. ) | |

The matter is before the court on the motion for summary judgment (DE # 37) pursuant to Federal Rule of Civil Procedure 56 and motion to seal (DE # 40) filed by defendants Lead Correctional Officer Johnny Arrington ("Arrington"), Superintendent Gary Massey ("Massey"), Sergeant Eric Pittman ("Pittman"), and former Sergeant Kelvin Smith ("Smith"). Plaintiff responded to defendants' motion for summary judgment, but did not respond to the motion to seal.

---

[1] The party referred to by plaintiff as Gary Massey has informed the court that his correct name is Grady Massey, and the court hereinafter will refer to him as such.

[2] The party referred to by plaintiff as Sergeant Pittman has informed the court that his full name is Eric Pittman.

[3] The party referred to by plaintiff as Officer J. Arrington has informed the court that his full name is Johnny Arrington.

[4] The party referred to by plaintiff as Sergeant G. Bennett has informed the court that his full name is Gary Bennett. This party is now deceased.

[5] The party referred to by plaintiff as Sergeant K. Smith has informed the court that his full name is Kelvin Smith.

In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' motion for summary judgment, but denies defendants' motion to seal.

## STATEMENT OF THE CASE

On April 23, 2010, plaintiff filed this action *pro se* pursuant to 42 U.S.C. § 1983, alleging that the above-stated defendants, as well as former Sergeant Gary Bennett ("Bennett"), used excessive force against him in violation of the Eighth Amendment to the United States Constitution. On April 19, 2011, defendants filed a motion for a protective order prohibiting discovery in this case until the court adjudicates their qualified immunity defense. The court granted defendants' motion.

Defendants filed a motion for summary judgment on June 10, 2011, arguing that plaintiff is not able to establish that they used excessive force against him in violation of the Eighth Amendment. Alternatively, defendants assert the defense of qualified immunity. Along with their motion for summary judgment, defendants filed a motion to seal exhibit C attached to the affidavit of Dr. Phillip Stover ("Dr. Stover").[6]

In response to defendants' motion for summary judgment, plaintiff argued that defendants possess a video tape of the alleged excessive force incident, but that it was not made part of the record. Accordingly, on February 9, 2012, the court directed defendants to submit to the court any video tape of the alleged use of force incident on November 29, 2009. Defendants responded to the court's order, and Massey submitted a sworn affidavit stating that "no video recording of the use of force incident involving Plaintiff on 29 November 2009 exists." (DE # 45) Aff. of Massey ¶ 4. Plaintiff filed a response to Massey's affidavit.

---

[6] Dr. Stover, a licensed physician on contract with the North Carolina Department of Correction, submitted an affidavit in support of defendants' motion for summary judgment. Stover Aff. ¶ 3. Dr. Stover is not a party to this action.

2

## STATEMENT OF THE FACTS

The undisputed facts are as follows. Plaintiff's allegations arise out of events that occurred on November 29, 2009, while he was incarcerated at Caledonia Correctional Institution ("Caledonia"). Defendants state that Caledonia's Administrative Captain received an anonymous letter stating that plaintiff was receiving drugs during visitation. Massey Aff. ¶ 8. On November 29, 2009, Arrington and Pittman called plaintiff into the bathroom for a search following visitation. Plaintiff was directed to remove all of his clothes. Plaintiff complied with the officers' order, and removed all of his clothes with the exception of his underwear. Arrington and Pittman then ordered plaintiff to squat and cough. Plaintiff complied.

The parties' accounts of the incident from this point forward differ. According to plaintiff, after he squatted and coughed, he turned around to see if he had dropped his identification card and keys. Pittman then grabbed plaintiff's neck, pushed him outside of the door into the visitation area, and began choking him. Plaintiff attempted to hold onto to a nearby water fountain for support, but was hit by Arrington and fell to the floor. Pittman continued to choke plaintiff and bang plaintiff's head against the floor. Smith joined Pittman and Arrington, and the officers repeatedly kicked plaintiff in the groin, left kidney, the front of his face, and his jaw. Smith, Pittman, and Arrington continued the assault for twenty (20) minutes. Bennett then grabbed plaintiff's left arm and twisted it into a position until it was almost broken.

Plaintiff asserts that he attempted to obey the officers' orders to spit out any alleged contraband, but could not comply because he was being choked. When plaintiff finally was able to comply, he spit out blood. Plaintiff then was locked in a shower cell. Plaintiff states that the alleged assault caused injuries to his face, neck, ribs, back, legs, and groin area. Plaintiff also alleges that

3

the incident caused him to experience depression, blood in his urine, high blood pressure, loss of consciousness, migraine headaches, neck pain, as well as anxiety and panic attacks. Finally, plaintiff states that the incident caused him to lose a firm grip on reality, resulting in his inability to tell truth from falsehood.

Defendants alternatively, assert that when plaintiff removed his clothes, he began coughing, placed his hand in his mouth, and put an unknown object into his mouth. Arrington Aff. ¶ 5. Plaintiff continued coughing and began walking toward the water fountain. Id. Pittman and Arrington ordered plaintiff to stop, but he refused. Arrington Aff. ¶ 5; Pittman Aff. ¶ 5. Pittman then walked behind plaintiff and ordered him to open his mouth and to stop his conduct. Pittman Aff. ¶ 6. When plaintiff refused Pittman's order, Pittman walked behind plaintiff and placed his right hand on plaintiff's shoulder. Id. Plaintiff then turned around and pushed Pittman against the wall, causing Pittman to hit his head and bend his eyeglasses. Id.

Plaintiff next ran into the visiting area, stopped at the water fountain, and began drinking water. Pittman Aff. ¶ 7; Arrington Aff. ¶ 7. Arrington and Pittman then ran toward plaintiff and wrestled him to the ground. Id. Plaintiff began spitting and struggling with Arrington and Pittman. Id. Plaintiff refused orders to stop resisting and to open his mouth. Id. Plaintiff then spit on Pittman's pant leg and shoe. Pittman Aff. ¶ 7. Additional staff arrived on the scene who handcuffed plaintiff and took him to the Unit IV shower area. Id. Massey ordered that plaintiff be drug tested following the incident. Massey Aff. ¶ 5. Plaintiff states that defendants did not recover any contraband from his person.

Following the alleged assault, plaintiff was examined by nursing staff. Stover Aff. ¶ 8 and Ex. B. p. 77. Plaintiff complained of injuries to his left jaw, left groin, and left arm. Id. Plaintiff

4

also told the nurse that his left arm was twisted up backwards and that he heard something pop. Id. The nurse examined plaintiff, and noted spasms in his left upper arm, but no bruising. Id. The nurse also noted a small scratch on the right side of plaintiff's face, but no bleeding. Id. Finally, the nurse noted some broken skin on plaintiff's left thumb. Id. Plaintiff was provided Ibuprofen and instructed to return if his symptoms persisted. Id. Additionally, on November 29, 2009, plaintiff was evaluated for segregation placement, and reported no suicidal ideation. Id. ¶ 9, Ex. B, p. 76 and Ex. C.

On November 30, 2009, Dr. Land examined plaintiff, and plaintiff complained of pain in his left shoulder and in his groin. Id. ¶ 11 and Ex. B. 65, 71. Dr. Land diagnosed plaintiff with a left shoulder strain and right groin strain, and treated him with Ibuprofen, Flexeril, and ice. Id. The next day, plaintiff had a dental evaluation at which he complained of pain in the left side of his jaw. Id. ¶ 12 and Ex. B, p. 26. The dentist noted multiple carious teeth and a history of having a previously fractured jaw. Id. Plaintiff subsequently had electromagnetic radiation ("x-ray") testing on his left shoulder, as well as a panorex x-ray. Id. ¶¶ 13, 14 and Ex. B. pp. 26, 65, 42, 43, and 71. The x-ray results were normal. Id.

On December 30, 2009, plaintiff was examined by Dr. Land. Id. ¶ 16, and Ex. B pp. 37, 41, 70. Plaintiff complained of pain in his right neck, left shoulder, and arm. Id. Dr. Land diagnosed plaintiff with a possible cervical radiculpathy. Id. Plaintiff again was evaluated by Dr. Land, on January 6, 2010, for an unrelated problem, and did not complain of neck or shoulder pain. Id. ¶ 17 and Ex. B p. 69. Finally, plaintiff denied any mental health problems on January 22, 2010. Id. Ex B, p. 18.

5

On February 19, 2010, plaintiff had a physician extender evaluation during which he complained of continued neck pain, decreased range of motion in his neck, and inability to move his left fourth and fifth fingers. Id. ¶ 19, Ex. B p. 68. Medical staff noted decreased range of motion in plaintiff's neck and left fourth and fifth fingers. Id. Plaintiff additionally was diagnosed with cervical radiculpathy and provided treatment. Id. Plaintiff complained of the same symptoms on March 31, 2010. Id. ¶ 21 and Ex. B p. 67.

On April 23, 2010, plaintiff had a magnetic resonance imaging ("MRI") test of his C-spine. Id. ¶ 22 and Ex. B p. 36. The MRI revealed that plaintiff had a metal artifact, likely a bullet, in his spine. Id.

On May 26, 2010, plaintiff informed medical staff that he previously had a carotid artery repaired after sustaining a gunshot wound to the neck. Id. ¶ 24 and Ex. B p. 66. Medical staff diagnosed plaintiff with arthritis to the neck at that appointment. Id. Finally, on June 10, 2010, plaintiff had a physical therapy evaluation which notes cervical pain, limited range of motion of the neck, and inability to adduct the fourth and fifth fingers of the left hand. Id. ¶ 25, and Ex. B pp. 45-47.

## DISCUSSION

A.  Motion to Seal

Defendants seek to seal exhibit C, attached to the affidavit of Dr. Stover, because it contains plaintiff's confidential mental health records. The public has a First Amendment right of access to the exhibit submitted in conjunction with a summary judgment motion. See, e.g., Va. Dep't of State Police v. Washington Post, 386 F.3d 567, 578 (4th Cir. 2004) (citing Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)). As such, the parties must offer a compelling

6

reason to keep them under seal. Id. at 578-79. Defendants have not met this burden. Moreover, defendants' memorandum in support of the motion to seal fails to comply with Section T of this district's CM/ECF Policy Manual, which requires that the party seeking sealing must explain "how such request to seal overcomes the common law or the First Amendment presumption to access; . . . the specific qualities of the material at issue which justify sealing such material, taking into account the balance of competing interest in access; . . . the reasons why alternatives to sealing are inadequate; and . . . whether there is consent to the motion." CM/ECF Policy Manual, Section T (E.D.N.C. Jan. 25, 2010). Finally, plaintiff has not filed any response to the motion to seal. Based upon the foregoing, the court DENIES the motion to seal.

B.  Failure to Obtain Service on Bennett

Plaintiff named Bennett as a defendant in this action, but has been unable to obtain service upon him within the time period required by Rule 4(m) of the Federal Rules of Civil Procedure. Plaintiff's initial attempt at service was returned un-executed. On December 20, 2010, the court informed plaintiff that he failed to make service on Bennett within one hundred twenty (120) days. Plaintiff also was informed that his action against Bennett would be dismissed without prejudice unless he demonstrated good cause as to why such service was not made within the one hundred twenty (120) day period. Plaintiff responded to the court's December 20, 2010, notice. On February 16, 2011, the court directed the North Carolina Attorney General to provide the court with Bennett's full name and last known address. On March 8, 2011, the North Carolina Attorney General responded that it could not locate an address for former North Carolina Department of Correction employee Bennett because he was deceased. Since the North Carolina Attorney General's response,

plaintiff has not shown good cause nor has he made any other attempts to serve Bennett. As a result, plaintiff's claim against Bennett is dismissed without prejudice.

C. Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2. Analysis

a. Video Footage

Plaintiff alleges that defendants possess video-taped footage of the November 29, 2009, use of force incident. The court directed defendants to submit any video tape of the alleged February 9, 2012, use of force incident. In response, defendants submitted an affidavit from Massey stating that "no video recording of the use of force incident involving Plaintiff on 29 November 2009 exists." Supp. Aff. of Massey ¶ 4. Plaintiff, in turn, asserts that Massey's continued "denial of review of video footage of Caledonia Corr. visitation area on 11-29-09, is further reason why said order to review video footage of Caledonia Corr. visitation area on 11-29-09 should be granted." (DE # 47).

8

Plaintiff, however, has not submitted any evidence to support the existence of a video tape of the incident, aside from his own conclusory allegations. Conclusory allegations are not sufficient to support a claim. White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required). Accordingly, the court finds that there is no evidence to suggest that defendants possess a video tape of the use of force incident at issue in this action.

        b.      Excessive Force Claim

In support of their motion for summary judgment, defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 821 (2009)[7]; Siegert v. Gilley, 500 U.S. 226, 232 (1991); Rogers, 249 F.3d at 286.

Plaintiff alleges that defendants used excessive force against him in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, plaintiff must establish that the "alleged wrongdoing was objectively harmful enough to establish a

---

[7] In Pearson, the Supreme Court overruled the mandatory two-step sequence adopted in Saucier v. Katz, 533 U.S. 194 (2001). See Pearson, 129 S. Ct. at 821.

9

constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994), abrogated on other grounds by Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175 (Feb. 22, 2010). The objective component of an excessive force claim is not as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated[,] whether or not significant injury is evident." Wilkins, 130 S.Ct. at 1178 (internal quotation marks and ellipsis omitted).

To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). For an excessive force claim, the relevant state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In determining whether a prison official has acted with "wantonness," a court should balance: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321; Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Applying the factors set forth above, the record does not support plaintiff's excessive force claim. First, there was a clear need for the force in that Pittman and Arrington suspected that plaintiff had placed contraband in his mouth. Although plaintiff states that he attempted to comply with the officers' orders to spit out the contraband, the record reflects that the officers believed plaintiff was refusing their orders. The need for force increased when plaintiff fled the bathroom, where the search occurred, into the visitation area, creating a security risk. Finally, the need for force further is supported by the fact that, following the incident, plaintiff incurred disciplinary convictions for his disruptive behavior. Massey Aff. ¶ 6 and Exs. E and F.

10

Although plaintiff reports that he received injuries to his face, neck, ribs, back, legs, and groin area, as well as anxiety, panic attacks, and other mental health issues, the alleged injuries largely are unsubstantiated by the record. Rather, the record reflects that plaintiff was medically screened immediately following the alleged use of force and the nurse noted only spasms in his left upper arm (no bruising), a small scratch on the side of his face, and some broken skin on his left thumb. Stover Aff. ¶ 8 and Ex. B p. 77. Plaintiff also was diagnosed with left shoulder and right groin strain. Id.¶ 11. The record further reflects that plaintiff repeatedly denied mental health issues following the incident. Id. ¶¶ 9 and Ex. B p. 18.

Plaintiff's only ongoing medical issue is a problem with the use of his fourth and fifth fingers, which Dr. Stover opines is the type of injury that could have occurred in the course of resisting the officers' attempt to bring him under control.[8] Id. ¶ 29. Finally, to the extent plaintiff complains of chronic neck pain, Dr. Stover opines that his complaints likely are attributable to a 1997 gunshot wound to his neck and signs of degenerative disk disease. Id. ¶ 28. Based upon the foregoing, the court finds that plaintiff's medical records do not support his allegations that he was kicked, choked, and beaten, including having his head repeatedly banged on the floor, for a period of twenty (20) minutes. Instead, plaintiff's medical records support a finding that minimal force was used to re-gain control over plaintiff during the incident.

Based upon the *de minimis* nature of plaintiff's injury, as well as the lack of evidentiary support for plaintiff's allegations regarding the assault, the court finds that the relationship between the need for force and the force used was proportionate. To the extent that the allegations differ with regard to the alleged use of force incident, there is no evidence suggesting that defendants applied

---

[8] The court notes that plaintiff did not allege that any officer engaged in conduct to intentionally injure his fingers.

force in a malicious, wanton, or sadistic manner. Rather, defendants' actions were reasonable considering the fact that plaintiff was acting in a disruptive manner and disobeyed direct orders from corrections officers. Further, defendants had an interest in re-gaining control over plaintiff because plaintiff had taken the altercation to the visitation area where other inmates and staff were present. Thus, the court finds that plaintiff is not able to satisfy either the objective or subjective prongs of the Eighth Amendment test. Thus, plaintiff is unable to establish a constitutional violation, and defendants are entitled to qualified immunity for plaintiff's excessive force claim.

          c.        Deliberate Indifference to Medical Care

Plaintiff states that Massey instructed medical staff to limit how much medical treatment he received. Compl. p. 11. Plaintiff further states that he is not receiving the "proper medical attention," but "only what they're willing to grant me to only to stabilize me, but not to get me back to full health." Id. p. 12. Plaintiff, however, does not provide any factual support for this claim, aside from these conclusory allegations. Moreover, a disagreement between an inmate and a physician regarding the appropriate form of treatment, such as the one suggested by plaintiff, does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Thus, this claim is without merit.

## CONCLUSION

For the foregoing reasons, defendants' motion to seal (DE # 40) is DENIED, and the Clerk of Court is DIRECTED to unseal defendants' motion to seal (DE # 40). Defendants' motion for summary judgment (DE # 37) is GRANTED. Plaintiff's claim against Bennett is DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

12

SO ORDERED, this the 9th day of March, 2012.

                                             /s/ Louise W. Flanagan
                                             LOUISE W. FLANAGAN
                                             United States District Judge

13

Case 5:10-ct-03058-FL   Document 48   Filed 03/09/12   Page 13 of 13